UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

Civil Action No. 4:10-CV-0021-BO

| | |
|---|---|
| LESLIE LINCOLN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | **WILLIAM CLARK EVERETT AND** |
| CITY OF GREENVILLE POLICE ) | **KIMBERLY ROBB** |
| DEPARTMENT, PITT COUNTY, ) | **MEMORANDUM IN SUPPORT OF** |
| JOSEPH SIMONOVICH, IN HIS ) | **MOTION TO DISMISS** |
| INDIVIDUAL AND OFFICIAL ) | **AMENDED COMPLAINT** |
| CAPACITIES, DAVID R. "RICKY" ) | |
| BEST, IN HIS INDIVIDUAL AND ) | |
| OFFICIAL CAPACITIES, DISTRICT ) | |
| ATTORNEY WILLIAM CLARK ) | |
| EVERETT, IN HIS INDIVIDUAL AND ) | |
| OFFICIAL CAPACITIES, KIMBERLY ) | |
| ROBB, IN HER INDIVIDUAL AND ) | |
| OFFICIAL CAPACITIES, BRENDA ) | |
| BISSETTE, IN HER INDIVIDUAL AND ) | |
| OFFICIAL CAPACITIES, AND THE ) | |
| NORTH CAROLINA STATE BUREAU ) | |
| OF INVESTIGATION ) | |
| ) | |
| Defendants. ) | |

NOW COME the defendants, Hon. William Clark Everett and Kimberly Robb, by and through their attorneys, Attorney General Roy Cooper and Special Deputy Attorney General David J. Adinolfi II, and move this Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss this matter . In support of this motion, defendants show the following:

## STATEMENT OF THE FACTS

Defendants hereby incorporate by reference each and every fact interposed in their previous Memorandum in Support of Motion to Dismiss.

Plaintiff's most significant amendments to the Complaint include slightly more emphasis on allegations that ADA Robb "investigated" and lengthier allegations against District Attorney Everett concerning his alleged failure to supervise and train ADA Robb. "William Clark Everett was the district attorney with assistant district attorney Kimberly Robb under his supervision at all times relevant was aware of her activities in regard to the investigation and prosecution...Defendant Everett negligently or with conscious and deliberate indifference caused the above-described injuries to Plaintiff by failing to properly train, supervise, and control the conduct of Robb... William Everett, District Attorney, under color of law, intentionally, negligently, and with complete and deliberate indifference to Plaintiff's rights, caused Plaintiff to be deprived of her constitutional rights including but not limited to the Fourth, Fifth, Sixth, and Eighth amendments, by: a. failing to supervise properly the training and conduct of the assistant district attorneys, including Robb; b. failing to enforce the laws of North Carolina and the provisions of the Constitution of the United States. c. failure to train and have the proper policies customs practices and procedures to provide opposing counsel with exculpatory materials, information and tangle [sic] things, more commonly referred to as Brady materials."(¶'s Amended Complaint paragraphs 42., 68., 87., 106., 123.).

The rest of the allegations are identical to those in plaintiff's Complaint (albeit renumbered and slightly reworded in parts), and all allegations against defendants Everett and Robb are still conclusory in nature, and insufficient to state a claim on which relief may be

granted.

## ARGUMENT

Defendants hereby incorporate by reference each and every argument interposed in their previous Memorandum in Support of Motion to Dismiss.

Plaintiff's Amended Complaint interposes new, conclusory allegations that defendant Everett "caused the above-described injuries to Plaintiff by failing to properly train, supervise, and control the conduct of Robb," and "failing to enforce the laws of North Carolina and the provisions of the Constitution of the United States." (Amended Complaint, ¶s 42., 106., 123.) In a post-Iqbal context plaintiffs must do more than memorize and regurgitate key legal phrases. They must allege facts that support the claims. See Nemet Cheverolet, 591 F.3d at 260 ("As recently emphasized by the Supreme Court, Rule 8 requires 'more than conclusions' to 'unlock the doors of discovery for a plaintiff.'" (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)). **Plaintiff alleges no facts in this regard, but merely regurgitated legal conclusions.** Meanwhile, in a "failure to supervise/failure to train" context, a subordinate defendant's prior wrongful behavior must be alleged in order to prevent dismissal under 12(b)(6) for failure to state a claim. No prior bad performance allegations (i.e. "ongoing forseeable harms" attributable to ADA Robb's prior job performance) are present either in plaintiff's Complaint or Amended Complaint:

> With the exceptions of Lamb and Hogan, in none of the cases cited above was the cause of action allowed. Significantly, both Lamb and Hogan involved **well-known and certain, ongoing foreseeable harms occurring on the employer's premises while the employee was on duty**. In Lamb, a case decided in 1901, the Court reversed a nonsuit in which **an employer was sued for hiring and retaining as a supervisor an individual widely known to be surly, violent, and ill-tempered toward children. There, the employee pushed to the floor and injured a ten-year-old boy who was working as a mill floor-sweeper. In so deciding, the Court attached special importance to the fact that the employer hired and retained such a person to serve in the capacity of supervisor, a position inevitably involving interaction with the children** who worked

> **in the mill, and responsibility for the care and control of others**. Lamb, 128 N.C. at 363, 38 S.E. at 911-12.
> Similarly, in Hogan, the court deemed plaintiff's forecast of evidence sufficient to maintain her claim that her employer was liable for the negligent retention and supervision of plaintiff's co-worker, who **repeatedly sexually harassed her at work. The manager had been repeatedly informed by plaintiff of the activity and failed to intercede**. The court held that it was a jury question whether defendant, through its manager, failed to exercise reasonable care over its supervisory personnel to prevent the behavior directed toward the plaintiff. Hogan, 79 N.C. App. at 492, 340 S.E.2d at 122. The instant case does not involve such facts.

Braswell v. Braswell, 330 N.C. 363, 373, 410 S.E.2d 897, 903 (1991)(Emphasis added).

The case at bar does not contain any factual allegations of previous misconduct concerning ADA Robb, nor of any training which was not provided to ADA Robb by District Attorney Everett, the Administrative Office of the Courts or any other authority or agency. As such, the new "failure to train/supervise" allegations in plaintiff's Amended Complaint clearly fail to state a claim, and this matter must be dismissed under Rule 12(b)(6).

Plaintiff likewise attempts to fortify conclusory allegations the ADA Robb "investigated" the criminal case against plaintiff. There are limited exceptions to the absolute immunity prosecutors customarily enjoy:

> We have held that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, see Burns, supra, at 496, 111 S. Ct. 1934, 114 L. Ed. 2d 547, when the prosecutor makes statements to the press, Buckley v. Fitzsimmons, 509 U.S. 259, 277, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993), or when a prosecutor acts as a complaining witness in support of a warrant application, Kalina, supra, at 132, 118 S. Ct. 502, 139 L. Ed. 2d 471 (Scalia, J., concurring).

Van de Kamp v. Goldstein, 129 S. Ct. 855, 861, 172 L. Ed. 2d 706 (2009).

There is no allegation of purportedly wrongful "advice" defendants gave law enforcement, no legitimate, plausible allegation of a "public statement" and no allegation the either prosecutor/defendant acted as a complaining witness in the case at bar.

Plaintiff alleges that her murder indictment was a "public statement." That is simply,

clearly erroneous. An indictment is in no way similar to the legal import of a wrongful press statement, which would strip prosecutors of their absolute immunity. Drafting indictments and presenting a case to the grand jury are the soul of the prosecutorial function:

> [T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," and are nonetheless entitled to absolute immunity.

Imbler v. Pachtman, 424 U.S. 409, 431, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976).

As such, merely labeling acts which are intimately associated with the judicial process as "public statements" does not suddenly expose the prosecutors of North Carolina to lawsuits with less than absolute immunity as a defense.

As to the plaintiff's constant drumbeat of baseless, conclusory allegations that ADA Robb "investigated," they do not rise to a level that would remove the protections of absolute immunity. Plaintiff literally alleges no facts whatsoever to support the conclusion. ADA Robb was, in every allegation, talking to witnesses in preparation for court. This is an essential part of trial preparation and case evaluation, and involves the exercise of prosecutorial discretion. [**Query**: How is a prosecutor to evaluate a case if she does not confer with any and all potential witnesses? How will a prosecutor avoid violating a defendant's rights without making every effort to evaluate a case? How will a prosecutor decide which witnesses to call, or whether to pursue a case at all in her discretion, without speaking with all potential witnesses?] Even the alleged plea bargains made with potential witnesses (if they even occurred as plaintiff describes them) would be preparation for court, inasmuch as such plea deals are sometimes necessary in order to bring a witness to court to testify truthfully. All such performances of a prosecutor's duties are protected by absolute immunity. So too are decisions relating to exculpatory or Brady material disclosures, about which plaintiff also complains baselessly (as Exhibit 1 shows, both

DA Everett and ADA Robb were exonerated by the North Carolina State Bar's finding of "no probable cause" in plaintiff's Bar grievances against them):

> In Fletcher the Court explained that, to protect the independent judgment of prosecutors, an official is absolutely immune from suit when "performing functions that require the exercise of prosecutorial discretion." 118 S. Ct. at 507. The decision whether to disclose exculpatory evidence to an adversary is **a central part of the prosecutor's trial preparation**, is undertaken in the role of advocate for the State, and plainly requires the exercise of prosecutorial discretion. Imbler itself involved the prosecution's alleged suppression of material evidence at trial. 424 U.S. at 413-16. And subsequent decisions have left no doubt that prosecutors enjoy absolute immunity from claims alleging a failure to disclose exculpatory evidence. For example, the Court in Fletcher described Imbler as providing an absolute immunity defense to the prosecutor from Imbler's "charge that exculpatory evidence had been suppressed." Fletcher, 118 S. Ct. at 506. And in Burns, the Court explained that its Imbler decision, pursuant to the functional approach, held the prosecutor absolutely immune from suit for the "deliberate suppression of exculpatory evidence." Burns, 500 U.S. at 486. **The Court has also stated that actions for which a prosecutor is accorded absolute immunity "must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury..."** Buckley, 509 U.S. at 273; see Ireland, 113 F.3d at 1445.

Jean v. Collins, 155 F.3d 701, 706 (4th Cir. 1998)(Emphasis added). Further, there is no allegation that ADA Robb "advised" any law enforcement officer in relation to the investigation. The "investigation" allegations are merely a nefarious device of the plaintiff geared toward misleading this Court and ginning up a claim that would remove absolute immunity from Defendants Robb and Everett.

The persistent refrain of plaintiff's allegations against ADA Robb is that she "cultivated witnesses" and offered those that were criminal defendants plea bargains. The core of the plaintiff's complaints in this regard is that Robb's contacts with witnesses were somehow tortious because they were "in violation of the Rules of Professional Conduct." Plaintiff continually emphasizes that ADA Robb spoke to witnesses with Officer Best, as if that would taint such contacts with the brand of "investigation." While we by no means concede that anything defendants did was "investigation," the prosecutorial functions of speaking to witnesses

with law enforcement present, and having some involvement in the investigation, are so fundamental to North Carolina criminal practice, they are codified in N.C.G.S. §15A-903(a)(1):

> (a) Upon motion of the defendant, the court must order the State to:
>
> (1)Make available to the defendant the complete files of **all law enforcement and prosecutorial agencies involved in the investigation of the crimes** committed or the prosecution of the defendant. Oral statements shall be in written or recorded form, except that **oral statements made by a witness to a prosecuting attorney outside the presence of a law enforcement officer or investigatorial assistant** shall not be required to be in written or recorded form unless there is significantly new or different information in the oral statement from a prior statement made by the witness.

N.C.G.S. §15A-903(a)(1)

There is no impropriety in a prosecutor speaking to a witness, with or without law enforcement present, and the fact that it occurred is not sufficient to remove the protection of absolute immunity from defendants Robb and Everett, inasmuch as it is part of case preparation, hence part of a prosecutor's official prosecutorial function. Case preparation is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976). As such, absolute immunity still applies to defendants.

As to plaintiff's chorus of allegations that there was "no probable cause" to support the murder case against plaintiff, it is also clearly baseless. Plaintiff admits that a Magistrate issued a warrant for Plaintiff's arrest. The grand jury and Superior Court Judge both found probable cause. (Amended Complaint, ¶s 91.-95.) All three are independent of DA Everett and ADA Robb, and all found probable cause. If it were otherwise, the case would not have gotten to trial or, once there, would have ended in a nonsuit at the end of the State's case, rather than acquittal. The legal weight of acquittal at Superior Court in favor of plaintiff's lawsuit is precisely zero. Acquittal does not automatically entitle the criminal defendant to a viable cause of action against the State, prosecutors or law enforcement. See Baker v. McCollan, 443 U.S. 137, 145 (1979)

("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted[.]"). Even participation in a search does not automatically strip a prosecutor of absolute immunity:

> A prosecutor, acting within the scope of his duties in initiating and pursuing a criminal prosecution, is absolutely immune from a civil suit for damages under 42 U.S.C. § 1983. Imbler v. Pachtman, 424 U.S. 409, 431, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976). Preparation for the initiation of a criminal prosecution and for a trial often require the obtaining, reviewing and evaluation of evidence, making the distinction between necessary and excessive investigation an extremely clouded one. If, however, it is determined that the activities of a prosecutor are purely investigative and police related in nature and beyond the scope of his prosecutorial duties, the protection of absolute immunity from civil liability is lost. McCray v. Maryland, 456 F.2d 1, 3-4 (4th Cir. 1972); Joseph v. Patterson, 795 F.2d 549 (6th Cir. 1986).
> As an appellate court, we will apply a functional test when determining whether the actions of a prosecutor are so intimately and inexorably tied to the prosecutorial phase of the criminal process as to warrant the blanket protection that absolute immunity affords. Imbler v. Pachtman, 424 U.S. at 813; Harlow v. Fitzgerald, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). In conducting such an inquiry, we must balance the right of a citizen to have avenues of redress for constitutional wrongs with the need to assure that a prosecutor vigorously and zealously pursue just prosecution without fear of vexatious litigation, causing deflection of a prosecutor's energies from his public duties. Imbler 424 U.S. at 423. See also Haynesworth v. Miller, 261 U.S. App. D.C. 66, 820 F.2d 1245, 1267-68 (D.C.Cir. 1987). 5
> We find no support for the proposition that participation in an authorized search automatically strips a prosecutor of his privilege of civil immunity. There must be evidence that such participation fell squarely beyond the bounds of the public duty to prepare a complete prosecution. We find no such evidence here and we agree with the findings and conclusions of the district judge to this effect.

Pachaly v. Lynchburg, 897 F.2d 723, 727-728 (4th Cir. 1990).

Plaintiff goes further than simply complaining about the alleged "investigations" ADA Robb performed and alleged discussions ADA Robb had with potential witnesses. Plaintiff issues a fusillade of opinions that Robb's techniques were poor investigation and/or trial preparation techniques, which prevented "Arlene Lincoln's possible real killer" from confessing (Amended Complaint, ¶89.). This is so utterly beyond the pale, and absurd, that case law does not exist to describe it. There is no case which allows a plaintiff's attorney to review and

condemn the actions of a prosecutor acting in the course of his or her professional duties, and then allow those statements of opinion to substitute for allegations of fact. Prosecutorial discretion allows a prosecutor to make such strategic decisions without a criminal defendant (or civil plaintiff) having any input. The reasons for this are obvious. Nothing in the law allows a Court to substitute a plaintiff's opinion of the quality of evidence, or of strategies employed, for a prosecutor's discretion in any case. "A subject of a criminal investigation does not have a constitutional right to have a criminal investigation performed in a desired manner." Bernstein v. United States by and Through IRS, 990 F. Supp. 428, 437, 1997 U.S. Dist. LEXIS 19091 (1997); See also Mathis v. Town of Waynesville, 2009 U.S. Dist. LEXIS 126103 (W.D.N.C. Dec. 4, 2009).

Moreover, the allegations of appearances before a Magistrate and a Superior Court cannot form the basis of a cause of action, inasmuch as the Courts function as a filtration device in the judicial system, designed for the protection of individual liberties and rights:

> [A] prosecutor should not be stripped of immunity for seeking approval of official actions from a court. **Dababnah can hardly be heard to complain about a prosecutor's resort to the judicial process, which the Supreme Court has extolled as "largely self-correcting,"** Mitchell v. Forsyth, 472 U.S. 511, 522, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985), and **designed for the protection of individual liberties and rights**. In the present case, **the judicial process provided numerous safeguards** to Dababnah. First, Keller-Burnside was acting "under the watchful eye of the judge and in the shadow of the ever-present possibility of judge-imposed sanctions." Marrero v. City of Hialeah, 625 F.2d 499, 509 (5th Cir. 1980); see also Butz v. Economou, 438 U.S. 478, 512, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978); Imbler, 424 U.S. at 427. Second, Dababnah was present in court when Keller-Burnside requested the order. And he had the right to have an attorney present at this hearing.
> Further, prosecutorial abuses -- and we in no sense imply the presence of misconduct here -- are subject to criminal and professional sanction. See, e.g., Imbler, 424 U.S. at 429; Malley v. Briggs, 475 U.S. 335, 343 n.5, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986). **Dababnah has, in fact, already filed a complaint with the West Virginia bar against Keller-Burnside, presumably covering at least some of the same actions he challenges in this § 1983 suit. Protections such as these "obviate the need for damages actions to prevent unjust results."** Mitchell, 472 U.S. at 522-23; accord Butz, 438 U.S. at 512.

Dababnah v. Keller-Burnside, 208 F.3d 467, 470-471 (4th Cir. 2000)(Emphasis added).

As previously noted in our initial Memorandum in Support of Motion to Dismiss, Exhibit 1, plaintiff has already gone the route of filing Bar Grievances against both defendants DA Everett and ADA Robb. The North Carolina State Bar found "no probable cause" in both cases. As such, under the standard delineated in Dababnah, the plaintiff's Complaint and Amended Complaint are virtually frivolous, and must be dismissed.

### CONCLUSION

For the reasons argued above, defendants move the Court for an Order dismissing all of plaintiff's claims against them, with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted, this the 9th day of September, 2010.

        ROY COOPER
        Attorney General of North Carolina

        /s/ David J. Adinolfi II
        David J. Adinolfi II
        Special Deputy Attorney General
        N.C. State Bar #27169
        Post Office Box 629
        Raleigh, North Carolina 27602-0629
        Telephone: (919) 716-6500

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of September, 2010, I served a copy of defendants' Memorandum in Support of Motion to Dismiss upon the persons indicated below by electronic filing the foregoing Memorandum in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

<u>Attorneys for Plaintiff</u>:
Kathryn P. Fagan                kpfagan45@yahoo.com
Ernest L. Conner, Jr.           Ernestconner@earthlink.net

<u>Attorneys for Defendants,
City of Greenville Police Dept.,
Joseph M. Simonowich,
David "R" Ricky Best</u>:
Gary S. Parsons                 gary.parsons@troutmansanders.com
Gavin B. Parsons                gavin.parsons@troutmansanders.com
Patricia P. Kerner              tricia.kerner@troutmansanders.com
William J. Little, III          blittle@greenvillenc.gov
D. Martin Warf                  warf@troutmansanders.com

<u>Attorney for Defendants,
Brenda Bisette and SBI</u>:
Alexander McC. Peters           apeters@ncdoj.gov
Melissa L. Trippe               mtrippe@ncdoj.com

This the 9th day of September, 2010.

            ROY COOPER
            Attorney General of North Carolina

            /s/ David J. Adinolfi II
            David J. Adinolfi II
            Special Deputy Attorney General