IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:10-CV-21-BO

| | |
|---|---|
| LESLIE LINCOLN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| CITY OF GREENVILLE, PITT COUNTY, ) | |
| JOSEPH M. SIMONOWICH, in his ) | |
| individual and official capacities, DAVIS R. ) | |
| "RICKY" BEST, in his individual an official) | |
| capacities, DISTRICT ATTORNEY ) | |
| WILLIAM CLARK EVERTT, in his ) | |
| individual and official capacities, ) | |
| KIMBERLY ROBB, in her individual and ) | |
| official capacities, BRENDA BISSETTE, ) | |
| in her individual and official capacities, and ) | |
| THE NORTH CAROLINA STATE ) | |
| BUREAU OF INVESTIGATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on 14 separate motions:

Defendants Greenville Police Officer Davis Best, Greenville Chief of Police Joseph Simonowich, and City of Greenville[1] have filed a (1) Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Process and Service (D.E. # 15), (2) Motion to Dismiss for Failure to State a Claim (D.E. # 17), (3) Motion to Strike Amended Complaint (D.E. # 58), (4) Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction and Insufficient Process and

---

[1] Plaintiff originally sued the City of Greenville Police Department, but changed the Defendant to the City of Greenville in her Amended Complaint.

Service (D.E. # 60), and (5) Motion to Dismiss Amended Complaint for Failure to State a Claim (D.E. # 62).

Defendants Pitt County District Attorney William Clark Everett and Pitt County Assistant District Attorney Kimberly Robb have filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (D.E. # 33), and a Motion to Dismiss Amended Complaint on the same grounds (D.E. # 53).

Defendants North Carolina State Bureau of Investigation (SBI) and SBI Special Agent Brenda Bissette have filed a Motion to Dismiss (D.E. # 30) and a Motion to Dismiss Amended Complaint on multiple grounds (D.E. # 56).

Plaintiff has filed five Motions for Extension of Time to amend her complaint (D.E. #36) and to respond to the above motions to dismiss (D.E. ## 36, 45, 47, 49, 69). Plaintiff improperly filed her Amended Complaint and an untimely Response to Defendants' Motions without the Court's leave. (D.E. # 48, 72)

The Court has decided all 14 pending motions: Plaintiff's Motion for Extension of Time is GRANTED IN PART to the extent in requests additional time to amend her complaint. (D.E. # 36). Defendants' Motion to Strike the Amended Brief is DENIED. (D.E. # 58). Accordingly, all Motions to Dismiss addressing the Original Complaint are DENIED as moot. (D.E # 17, 30, 33). Plaintiff's four Motions for Extension of Time to respond to these Motions to Dismiss are also moot. (D.E. # 36[2], 45, 47, 49).

Plaintiff's Second Motion for Extension of Time is DENIED. (D.E. # 69). Accordingly, the Court STRIKES the Plaintiff's untimely Response (D.E. # 72) from the record.

Defendants Best, Simonowich, and City of Greenville's Motion to Dismiss Amended Complaint for Insufficient Process and Service is GRANTED (D.E. # 60), and all of Plaintiff's

---

[2] This motion was granted in part to the extent it requested to amend the complaint.

claims against these three Defendants are DISMISSED without prejudice. Their Motion to Dismiss Amended Complaint for Failure to State a Claim is thus DENIED as moot. (D.E. # 62).

Defendants Everett and Robb's Motion to Dismiss Amended Complaint is GRANTED (D.E. # 53), as Plaintiff's claims against these Defendants are barred by absolute immunity. Defendants Bissette and SBI's Motion to Dismiss Amended Complaint is also GRANTED (D.E. # 56), as Plaintiff's claims against these Defendants are barred by the statute of limitations. All of Plaintiff's claims against these four Defendants are DISMISSED with prejudice.

## I.   FACTS

Plaintiff was arrested for the murder of her mother on September 19, 2002. She was imprisoned for almost 5 years until a jury acquitted her on March 23, 2007. Plaintiff now sues the various state employees involved in the murder investigation and prosecution for denying her due process under 18 U.S.C. § 1983. Plaintiff alleges the following facts in her amended complaint. (D.E. # 48).

On March 17, 2002, Plaintiff visited with her mother, Arlene, until approximately 7:30 p.m. Plaintiff then purchased items Wal-Mart and went home. Afterward, someone entered Arlene's apartment, attacked Arlene, fatally stabbed her in the neck, and left her body on the bedroom floor. Before leaving the scene, the killer went through Arlene's purse, left four dollar bills on the living room couch, and abandoned a small dresser drawer on the bedroom floor. The following morning, someone used Arlene's credit card at Handy Mart 54 at 3:55 a.m. Am. Compl. 4-6.

When the Greenville police arrived at the murder scene on March 19th, they neglected to check the bills or purse for fingerprints, and never measured the footprints evident on the bloody bedroom floor. Id. at 5-6. Although a video was recovered from Handy Mart 54 showing the

transaction with Arlene's card, the Defendant Officer Best and the Greenville police later either lost or destroyed this video.

Defendant Best became the lead investigator in the case three days into the investigation. Believing that Arlene fought her killer, the police checked everyone in Arlene's family for injuries, including Plaintiff—none were found. Id. at 6. On March 22nd, Best interviewed Plaintiff for several hours. Although Plaintiff was always truthful and cooperative during these interviews, Best badgered Plaintiff and implied that she killed her mother. Id. at 7-8. Best also interviewed Plaintiff's boyfriend.

Defendant Best investigated the murder for a month, taking few notes. Best then stopped investigating for several months, until an employee from Plaintiff's nursing home called Best in August 2002, claiming she had heard rumors regarding the murder. Within a month of meeting with this employee, Best consulted with Defendant Assistant District Attorney Kimberly Robb. Robb was under the supervision of Pitt County District Attorney William Clark Everett. Id. at 7.

Best subsequently arrested Plaintiff on September 19, 2002. This was Plaintiff's first criminal charge. On the day of Plaintiff's arrest, Best executed search warrants on Plaintiff's truck and home. On September 23rd, Best executed a warrant on a small fish pond across from Plaintiff's home. Id. at 7-8. None of these searches produced any evidence against Plaintiff. Some or all of these search warrants were "falsely obtained." Id. at 19.

On October 2, 2002, Best executed a search warrant to obtain blood from Plaintiff. Best kept this blood and other DNA evidence in his car for "several weeks" until submitting in to the SBI for testing. Id. at 8. At this time, Best or another sworn law enforcement officer "switched" the blood and other DNA evidence in order to implicate Plaintiff. Id.

Within a week of Plaintiff's arrest, Robb "rushed" Plaintiff's case through the grand jury "in an attempt to keep Plaintiff from discovering the weakness of Best and Robb's case." Id. Within two weeks of Plaintiff's arrest, Robb announced she was seeking the death penalty against Plaintiff. Id. at 9.

On Thursday, March 28, 2002, Plaintiff submitted to another approximately five-hour interview by Greenville Police and Best. Id.

On April 15, 2002, Best obtained a videotape of the 3:55 a.m. March 18th transaction at Handy Mart gas station with Arlene's card. Best never provided this video to Plaintiff despite formal and informal requests. Id.

On November 11, 2002, Plaintiff and her boyfriend independently took and passed polygraph tests administered by retired SBI agent Steve Davenport. The defense provided this information to Defendant Robb. Id. at 8.

Robb did not provide any discovery to Plaintiff for more than six months. On March 27, 2003, Robb provided Plaintiff approximately 169 pages of discovery. No additional discovery was provided to Plaintiff for five additional months, until Robb gave the Plantiff DNA tests results on August 26, 2003. The report showed that the tests were conducted on June 3, 2003, and July 15, 2003 on evidence received October 18, 2002. The report incorrectly stated that the DNA found on a cushion and bed sheet matched Plaintiff's DNA. SBI Special Agent Brenda Bissette failed to follow proper procedures concerning the blood, and mishandled, mislabeled, and misidentified Plaintiff's DNA. Id. at 8-9.

The SBI rejected Plaintiff's counsel's request to retest the DNA. On November 23, 2004, an order was entered at the defense's request, allowing Lab Corp. of Research Triangle Park to test the DNA evidence using fresh DNA samples provided by Plaintiff. At this time, the SBI Lab

also voluntarily retested their original DNA samples. Id. at 10. On March 3, 2005, the District Attorney called the defense to inform that the SBI Lab had admitted making a mistake in this matter, and that "the DNA identified in the erroneous SBI Lab report was not Plaintiff's DNA, as previously reported." Id. at 10. On this day, the SBI lab also confirmed that a sworn law enforcement officer had "altered" the DNA tests. Id. at 11.

On March 8, 2005, Robb provided Plaintiff with 712 pages of additional discovery which failed to comply with a newly enacted "discovery statute." Id. at 11. This discovery failed to provide any information regarding the flawed DNA tests. After Plaintiff's lawyer complaints, Robb provided 498 additional pages of discovery on May 20, 2005, which still did not illuminate the cause and source of the erroneous DNA results. Id. at 11.

Upon learning that no forensic evidence linked Plaintiff to the crime, Defendants Robb and Best "individually and collectively conspired and worked to cultivate [several] false witnesses against the Plaintiff." Id. 12. These witnesses were all inmates who were in jail with Plaintiff. Id. at 12-18. During these interviews with these inmates, Best and Robb intentionally took no notes to prevent Plaintiff from receiving full discovery. Id. at 16

At some undisclosed point, Plaintiff's private investigator located a man he believed was Arlene's real killer. Robb promptly interviewed this suspect and told him that Plaintiff's lawyer was trying to "pin" Arlene's murder on him. Id. at 18. This permanently damaged any ability to get a confession from this suspect, who had given a known false statement to the police within 24 hours of Arlene's murder. Id. at 18-19.

On March 23, 2007, Plaintiff was found not guilty of all charges in Pitt County Superior Court. North Carolina later expunged Plaintiff's records of the murder charge. Id. at 19.

Plaintiff filed the instant § 1983 suit against the Defendants on February 11, 2010. Attorney Kathryn P. Fagan filed an appearance for Plaintiff on February 19, 2010. Attorney James C. Plummer filed a special appearance for Plaintiff on September 24, 2010. Plaintiff is also represented by attorney Ernest L. Conner , Jr.

## II. DISCUSSION

This Order addresses 14 motions. The Court first grants Plaintiff's request to file an amended complaint. The Court then denies Plaintiff's Second Request for Extension of Time.

The Court dismisses Plaintiff's claims against Defendants Best, Simonowich, and City of Greenville without prejudice for improper service of process. The Court also dismisses Plaintiff's claims against Defendants Everett and Robb with prejudice for lack of subject matter jurisdiction, as the Defendants are protected by absolute immunity. Finally, Plaintiff's claims against Defendants Bissette and the SBI are dismissed with prejudice as the claims are barred by the three-year statute of limitations.

### A. Allowing the Amended Complaint

The Court grants Plaintiff's request to file an amended complaint, as justice so requires and the defendants would not be prejudiced by the amendment. Fed. R. Civ. P. 15(a)(2). Thus, Plaintiff's "Motion to Enlarge & to Expedite & Memorandum" (D.E. # 36) is granted to the extent in requests additional time to amend her complaint.

Although the Court realizes that Plaintiff prematurely filed her Amended Complaint without the Court's leave on August 26, 2010, Defendants' Motion to Strike the Amended Complaint is Denied. (D.E. # 58).

Accordingly, all Motions to Dismiss the Original Complaint are DENIED as moot. (D.E # 17, 30, 33). Plaintiff's four Motions for Extension of Time to respond to these Motions to Dismiss are also moot. (D.E. # 36[3], 45, 47, 49).

## B. Denying Motion for Extension of Time for Plaintiff's Response

Plaintiff failed to file a timely Response to any of the Defendants' Motions to Dismiss. The Court denies Plaintiff's Second Motion for Extension of Time (D.E. # 69) as Plaintiff has failed to show excusable neglect.

To file late, a movant must show excusable neglect. "Exclusive neglect is not easily demonstrated, nor was it intended to be." Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996). The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). "The most important of the factors identified in Pioneer for determining whether 'neglect' is 'excusable' is the reason for the failure to file" a document within the allotted time. Thompson, 76 F.3d at 534. Clients are "accountable for the acts and omissions of their chosen counsel." Pioneer, 507 U.S. at 397.

Here, the due dates for Plaintiff's Responses to the Motions to Dismiss were September 30th and October 4th. Plaintiff filed her Motion for Extension on October 6th. (D.E. # 69). There are three attorneys representing Plaintiff: James Plummer, Kathryn Fagan, and Ernest Connor.

---

[3] This motion was already granted in part above, to the extent it requested an amendment to the complaint. (Supra Part II. A.)

8

According to Plaintiff's Motion, Plummer became distracted by two other pending trials. Plummer also states that the "associated counsel relied on by undersigned counsel to monitor and respond to any pending motions suddenly and unexpectedly became unavailable," which the Court assumes to mean that Plummer was relying on either Fagan or Connor. Plaintiff does not address why the third attorney was unable to monitor and respond to the pending motions.

These facts do not show excusable neglect. Plaintiff's Second Motion to Extend Time is thus denied. The Court strikes Plaintiff's Response to the Motions to Dismiss, which Plaintiff filed without the Court's leave (D.E. # 72).

### C. Dismissing Claims against Simonowich, Best, and the City

The Court dismisses Plaintiff's claims against Defendants Best, Simonowich, and the City under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.

#### a. Simonowich and Best

Plaintiff has neither served Defendants Simonowich and Best within 120 days, nor has she shown good cause for this failure.

According to Federal Rule of Civil Procedure 4(m):

> [i]f a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The Plaintiff has the burden of establishing the validity of service. See, e.g., In re Katrina Canal Breaches Litigation, 309 Fed. Appx. 833 (5th Cir. 2009).

Plaintiff filed her complaint on February 11, 2010. Simonowich was served with a copy of the summons and original Complaint on June 14, 2010, 123 days after the original Complaint was filed. (D.E. # 15-1, Simonowich Aff. ¶ 4.) Defendant Best was served with a summons and

9
Case 4:10-cv-00021-BO   Document 74   Filed 01/26/11   Page 9 of 15

a copy of the original Complaint on September 6, 2010, 164 days after the original Complaint was filed. (D.E. ## 60, 15-2).

Although Plaintiff improperly filed a Response to various pending Motions to Dismiss (D.E. # 72)[4], the Response did not provide any explanation for her failure to properly serve, nor has Plaintiff sought an extension of time to effect service of process. Thus, Plaintiffs claims against Defendants Simonowich and Best are dismissed without prejudice.

### b. The City of Greenville

Although Plaintiff's Original Complaint named the City of Greenville Police Department, her Amended Complaint names the City of Greenville instead.[5] The Plaintiff has not, however, properly served the Defendant City. Service fails under Rule 12(b)(5), as delivery was not proper. Service also fails under Rule 12(b)(4) as the summons did not properly contain the name of the Defendant.

Federal Rules of Civil Procedure 4(j)(2) provides that service on a local government must be accomplished by either "delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." North Carolina's state law governing service on municipalities requires service by:

> Personally delivering a copy of the summons and of the complaint to its mayor, city manager or clerk; by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to its mayor, city manager or clerk; or by depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the mayor, city manager, or clerk, delivering to the addressee, and obtaining a delivery receipt. As used in this sub-subdivision, "delivery receipt" includes an electronic or facsimile receipt.

---

[4] Plaintiff improperly filed this Response without leave of the court, since she filed it when Plaintiff's Second Motion for Extension of Time was still pending. (D.E. #69)
[5] It is well-settled that city police departments in North Carolina lack the capacity to be sued. See, e.g., Moore v. City of Asheville, 290 F. Supp. 2d 664, 673 (W.D.N.C. 2003).

N.C. Gen. Stat. § 1A-1, Rule 4(j)(5).

Here, Plaintiff has only served Diane Leathers, a "Community Service Clerk" for the Greenville Police Department on June 12, 2010 (D.E. ## 14, 46-1). Ms. Leathers is not the mayor, city manager, or city clerk, and is not authorized by appointment or law to accept service for the City. (D.E. ## 46, 46-1.). Additionally, the summons was directed to the Police Department, and not the City of Greenville, as required by Federal Rule of Civil Procedure 4(a)(1)(A). Although Defendants notified Plaintiff of this failure and how to correct it on July 2, 2010 (D.E. # 16), Plaintiff never took steps to do so. Plaintiff has never addressed her insufficient service of process to the City, not even in her improperly filed Response (D.E. # 72). Plaintiff has also not sought an extension of time to effect service of process.

Thus all claims against the City of Greenville are dismissed without prejudice. Defendants Best, Simonowich, and the City's Motion to Dismiss for Insufficient Process and Service is Granted (D.E. # 60) and their Motion to Dismiss for Failure to State a Claim is Moot (D.E. # 62).

### D. Dismissing Plaintiff's Claims against Defendants Everett and Robb

Absolute immunity bars Plaintiffs' claims against District Attorney Everett and Assistant District Attorney Robb.

State prosecutors have absolute immunity from liability for damages under § 1983 for acts done in the scope of their duties in initiating and prosecuting a case. As the Supreme Court has stated,

> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice.

Id. at 427. Absolute immunity extends to acts that deprive a defendant of constitutional rights, even where the prosecutor knowingly used perjured testimony at the trial, deliberately withheld exculpatory information, or failed to make a full disclosure of all facts casting doubt upon the state's testimony. Imbler v. Pachtman, 424 U.S. 409 (1976) overruled on other grounds by Harlow v Fitzgerald, 457 US 800, (1982). The Supreme Court has also stated that absolute immunity applies to a prosecutor's out-of-court "effort to control the presentation of [a] witness' testimony." Id. at 430, n 32. At least one court has interpreted this statement as encompassing witness coaching. Desrouleaux v. City of New York, No. 08-CV-3157, 2010 U.S. Dist. WL 3602997, at *3, (E.D.N.Y., September 7, 2010).

Absolute immunity has an exception for when a prosecutor acts as an administrator or an investigative officer rather than that as a court officer. Buckley v. Fitzsimmons, 509 U.S. 259 (1993). The Supreme Court has held,

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'

Id. at 273. Thus, when Prosecutors act as investigative officers, they receive only qualified immunity. Id. Importantly however, "the investigatory act of obtaining evidence known to be false is not itself a violation of a constitutional right." Instead, a prosecutor's act must have foreseeably and actually deprived the Plaintiff of a liberty interest. See, e.g., Zahrey v. Coffey, 221 F.3d 342, 354 (2nd Cir. 2000).

Here, Plaintiff alleges that Defendant Robb conspired to prosecute her without probable cause. Specifically, she alleges that Robb falsely accused her of murder, pursued her case even though she knew Plaintiff was innocent, rushed her case through the grand jury, publically

announced she was seeking the death penalty, and provided late and incomplete discovery. These allegations all fall within the scope of a prosecutor's duties in initiating and prosecuting a case, and are thus protected by absolute immunity.

Plaintiff also alleges that Robb coached and "cultivated" several inmates to provide false testimony against her. Am. Compl. 12-18. Plaintiff argues that Robb performed these acts as an investigative officer, and not a prosecutor. Even if this is true, Plaintiff has not explained how these acts would have deprived Plaintiff of liberty as Plaintiff claims these acts occurred between 2005 and 2007; this would have been well after Plaintiff's arrest and grand jury indictment in 2002. Am. Compl. 12-18. In addition, Plaintiff does not state whether or not Robb actually used this evidence at trial. Even if she had, the jury acquitted Plaintiff, so no testimony presented at trial could have deprived her of liberty. Thus any alleged witness coaching would not have violated Plaintiff's rights. Accordingly, Plaintiff has failed to state a claim against Robb.

Plaintiff's claims against District Attorney Everett revolve around his position as "policy maker" and his failure to properly train, supervise, and control the above conduct of Robb. Id. at 22, 27. Such a claim however, could only succeed if Robb actually violated Plaintiff's Rights. As stated above, Plaintiff has failed to show this. Thus Plaintiff has stated no claim against Everett.

Therefore Everett and Robb are entitled to absolute immunity from Plaintiff's claims. Everett and Robb's Motion to Dismiss for Failure to State a Claim (D.E. # 53) is granted.

### Dismissing Plaintiff's Claims against Bissette and the SBI

The Statute of Limitations bars Plaintiff's claim against SBI Special Agent Bissette and the SBI.[6]

---

[6] Although the Court is not considering the Plaintiff's late Response to Bissette and the North Carolina State Bureau of Investigation Motion to Dismiss (D.E. # 56), it is worth nothing that the Response did not address the statute of limitations.

There is no federal statute of limitations for § 1983 claims; Courts instead borrow the state statute of limitations for personal injury lawsuits. See, e.g., Owens v. Okure, 488 U.S. 235 (1989). The statute of limitations for § 1983 actions in North Carolina is three years. National Advertising Co. v. City of Raleigh, 947 F.2d 1158 (4th Cir. 1991). Claim accrual is a matter of federal law, and occurs when the plaintiff knows or should have known of the injury. Winston-Salem, 85 F.3d 178, 182 (4th Cir. 1996).

Here, Plaintiff alleges Bissette failed to follow proper procedures concerning her blood and DNA evidence, and mishandled, mislabeled, and misidentified this evidence. Id. at 8-9. Plaintiff alleges no facts specific to SBI besides its role as Bissette's employer.

At the absolute latest, Plaintiff became aware of her alleged injury by Bissette and the SBI on March 3, 2005, when Robb called the Plaintiff to inform her that the SBI Lab admitted making a mistake when testing her DNA. Am. Compl. ¶ 51. Thus the statute of limitations had run by March 3, 2008 – almost two years before plaintiff filed her complaint.

Therefore, all claims against Bissette and SBI are untimely.

## CONCLUSION

Plaintiff's claims against Defendants Best, Simonowich, and City of Greenville are DISMISSED without prejudice for improper service of process.

Plaintiffs' claims against Defendants Everett and Robb are DISMISSED with prejudice for failure to state a claim, as the Defendants are protected by absolute immunity.

Plaintiff's claims against Defendants Bissette and the North Carolina State Bureau of Investigation are DISMISSED with prejudice as the statute of limitations bars the claims.

SO ORDERED, this 25 day of January, 2011.

                                                                                           TERRENCE W. BOYLE
                                                     UNITED STATES DISTRICT JUDGE